1  M. Jonathan Hayes (Bar No. 90388)
   Roksana D. Moradi (Bar No. 266572)
2  **Law Offices of M. Jonathan Hayes**
   9700 Reseda Blvd., Suite 201
3  Northridge, CA 91324
   Telephone:  (818) 882-5600
4  Facsimile:  (818) 882-5610
   jhayes@hayesbklaw.com
5  roksana@hayesbklaw.com

6  *Attorneys for Debtor*
   WOOTON GROUP, LLC
7

8            UNITED STATES BANKRUPTCY COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10               LOS ANGELES DIVISION

11  In re                          )  Case No. 2:12-31323-TD
                                   )
12                                 )  Chapter 11
        WOOTON GROUP, LLC,         )
13                                 )  **DEBTOR'S DISCLOSURE**
                                   )  **STATEMENT DESCRIBING**
14                     Debtor.     )  **DEBTOR'S CHAPTER 11 PLAN**
                                   )
15                                 )  ***Disclosure Statement Hearing:***
                                   )  Date:   January 9, 2013
16                                 )  Time:  10:00 a.m.
                                   )  Ctrm:  1345
17                                 )         255 East Temple Street
                                   )         Los Angeles, CA 90012
18                                 )
                                   )  ***Plan Confirmation Hearing:***
19                                 )  Date:
                                   )  Time:  11:00 a.m.
20                                 )  Ctrm:  1345
                                   )         255 East Temple Street
21                                 )         Los Angeles, CA 90012
                                   )
22  _____

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**LAW OFFICES**
M. Jonathan Hayes

## *Contents*

I.      **INTRODUCTION**..............................................................................

    A. PURPOSE OF THIS DOCUMENT ................................................... 5

    B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ........................................................................................... 6

    C.  TIME AND PLACE OF THE CONFIRMATION HEARING ....................... 7

    D.  Deadline For Voting For or Against the Plan .................................... 7

    E.  Deadline For Objecting to the Confirmation of the Plan ................... 7

    F.  Identity of Person to Contact for More Information Regarding the Plan ................................................................................................ 7

    G.  Important Notices and Cautionary Statements ................................ 8

II.    9

**BACKGROUND** .................................................................................... **9**

    A.  Description and History of the Debtors' Business ............................ 9

    B.  Principals/Affiliates of Debtor's Business ........................................ 9

    C.  Management of the Debtor Before and After the Bankruptcy ......... 10

    D.  Events Leading to Chapter 11 FilinG ............................................ 10

    E.  Significant Events During the Bankruptcy ..................................... 10

        1.  Bankruptcy Proceedings ........................................................ 10

        2.  Other Legal Proceedings ........................................................ 13

        3.  Claims Objections ................................................................. 13

        4.  Adversary Proceedings ........................................................... 13

        5.  Actual and Projected Recovery of Preferential or Fraudulent Transfers ............................................................ 13

        6.  Procedures Implemented to Resolve Financial Problems ........... 13

III.  **SUMMARY OF THE PLAN OF REORGANIZATION** ................................. **14**

    A.  GENERAL OVERVIEW ................................................................ 14

    B.  UNCLASSIFIED CLAIMS ............................................................. 14

    C.  ADMINISTRATIVE EXPENSES ................................................... 14

D.   PRIORITY TAX CLAIMS ............................................................... 15

E.   CLASSIFIED CLAIMS AND INTERESTS ..................................... 15

**Class 1 -** Secured Claim of Investors Warranty on Angus
Property ........................................................................ 15

**Class 2 -** Secured Claim of Investors Warranty on Navone
Property ........................................................................ 16

**Class 3 -** Secured Claim of Citizens Bank  on Navone Property ............... 17

**Class 4A -** Secured Claim of the San Joaquin County Treasurer
and Tax Collector ........................................................ 18

**Class 4B -** Secured Claim of the Fresno County  Treasurer and
Tax Collector ............................................................... 18

**Class 5 -** Priority Unsecured Claims ............................................... 18

**Class 6** – Unsecured Claims ......................................................... 19

**Class 7**  – Unsecured Claims – tenant deposits ............................... 19

**Class 8**  – Debtor ........................................................................ 20

F.   Means of Performing the Plan ........................................................ 20

1.   Funding for the Plan ........................................................... 20

2.  Management of the Reorganized Debtor ............................... 20

3.   Disbursing Agent ................................................................ 20

4.   Distributions ...................................................................... 20

G.   RISK FACTORS ........................................................................... 20

H.   OTHER PROVISIONS OF THE PLAN ......................................... 21

1.   Executory Contracts and Unexpired Leases ........................ 21

2.   Changes in Rates Subject to Regulatory Commission Approval .................... 22

3.   Retention of Jurisdiction ...................................................... 22

I.   TAX CONSEQUENCES OF THE PLAN ........................................ 22

**IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES ......................... 23**

A.   WHO MAY VOTE OR OBJECT ..................................................... 23

1.   Who May Object to Confirmation of the Plan ....................... 23

2.   Who May Vote to Accept/Reject the Plan ............................ 23

DISCLOSURE STATEMENT

**LAW OFFICES**
M. Jonathan Hayes

3.   Who is Not Entitled to Vote ................................................................ 24

4.   Who Can Vote in More Than One Class............................................... 25

5.   Votes Necessary to Confirm the Plan .................................................. 25

6.   Votes Necessary for a Class to Accept the Plan.................................. 25

7.   Treatment of Non-accepting Classes.................................................... 25

8.   Request for Confirmation Despite Non-acceptance by
     Impaired Classes ................................................................................. 26

B.   LIQUIDATION ANALYSIS ................................................................ 26

Feasibility ......................................................................................................... 27

V.  EFFECT OF CONFIRMATION OF PLAN ............................................... 28

1.  Discharge .............................................................................................. 28

2.  Revesting of Property in the Debtor .................................................... 28

3.  Modification of Plan ............................................................................ 29

4.  Post-Confirmation Employment and Compensation of
    Reorganized Debtor's Professionals ................................................... 29

5.  Post-Confirmation Status Report.......................................................... 29

6.  Post-Confirmation Conversion/Dismissal ........................................... 29

7.  Final Decree.......................................................................................... 30

SUPPORTING DECLARATION ........................................................................ 31

Mark Slotkin ....................................................................................................... 31

EXHIBIT A - LIST OF ALL ASSETS ............................................................... 32

EXHIBIT B – DEBTOR'S FINANCIAL STATEMENTS AND
           PROJECTIONS........................................................................... 33

EXHIBIT C - LIST OF CREDITORS/CLAIMS ................................................. 34

# I.  **INTRODUCTION**

WOOTON GROUP, LLC. ("the Debtor"), Debtor-in-Possession in the above-referenced Chapter 11 case, commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on June 19, 2012.  It is hereinafter referred to as the "Debtor."  This document is the Chapter 11 Disclosure Statement.  Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization (the "Plan").  The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor is the proponent (the "Proponent") of the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

In summary, this Plan provides for payment to holders of allowed claims.  The timing of Plan payments to particular creditor groups will depend upon their classification under the Plan.  The Effective Date of the Plan shall be the first Business Day of the first calendar month that is 14 calendar days after the entry of the Order Confirming the Plan.

## A.  **PURPOSE OF THIS DOCUMENT**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)    WHO CAN VOTE OR OBJECT;**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT**

**LAW OFFICES**
M. Jonathan Hayes

1  **COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

2  **(3)     THE HISTORY OF THE DEBTOR AND SIGNIFICANT**

3  **EVENTS DURING THE BANKRUPTCY;**

4  **(4)     WHAT THINGS THE COURT WILL LOOK AT TO DECIDE**

5  **WHETHER OR NOT TO CONFIRM THE PLAN;**

6  **(5)     WHAT IS THE EFFECT OF CONFIRMATION;**

7  **(6)     WHETHER THIS PLAN IS FEASIBLE.**

8  This Disclosure Statement cannot tell you everything about your rights.  You should

9  consider consulting your own legal counsel to obtain more specific advice on how this

10  Plan will affect you and what is the best course of action for you.

11  Be sure to read the Plan as well as the Disclosure Statement.  If there are any

12  inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will

13  govern.

14  The Code requires a Disclosure Statement to contain "adequate information"

15  concerning the Plan.  The Bankruptcy Court (the "Court") has approved this document as

16  an adequate Disclosure Statement, containing enough information to enable parties

17  affected by the Plan to make an informed judgment about the Plan. Any party can now

18  solicit votes for or against the Plan.

19

20  **B.  DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN**

21  **CONFIRMATION HEARING**

22  THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

23  DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE

24  NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER

25  CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR

26  AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

27  ///

28

**LAW OFFICES**
M. Jonathan Hayes

6
DISCLOSURE STATEMENT

1   ///

2   ## C.   TIME AND PLACE OF THE CONFIRMATION HEARING

3          The hearing where the Court will determine whether or not to confirm the Plan will

4   take place on ------------, 2012 at 11:00 a.m. in Courtroom 1345, 255 East Temple Street,

5   Los Angeles, CA 90012.

6

7   ## D.   DEADLINE FOR VOTING FOR OR AGAINST THE PLAN

8          If you are entitled to vote, it is in your best interest to timely vote on the enclosed

9   ballot and return the ballot to counsel for the Debtor at the following address:

10                          Law Offices of M. Jonathan Hayes
                            9700 Reseda Blvd, Ste 201
11                          Northridge, CA 91324
                            Telephone:  (818) 882-5600
12                          Facsimile:  (818) 882-5610
                            jhayes@hayesbklaw.com
13                          roksana@hayesbklaw.com

14          **Your ballot must be received by 4:00 p.m. PST on -----------------2013 or it will**

15   **not be counted**.

16

17   ## E.   DEADLINE FOR OBJECTING TO THE CONFIRMATION OF THE PLAN

18          Objections to the confirmation of the Plan must be filed with the Court and served

19   so that any objections are actually received by counsel for the Debtor by 4:00 p.m. PST on

20   -------------, 2012.

21

22   ## F.   IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION

23   ## REGARDING THE PLAN

24          Any interested party desiring further information about the Plan should contact

25   counsel for the Debtor, M. Jonathan Hayes, 9700 Reseda Blvd, Ste 201, Northridge, CA

26   91324, (818) 882-5600 or jhayes@hayesbklaw.com.

27   ///

28

## DISCLAIMER

The financial data relied upon in formulating the Plan is based on the Debtor's books and records and historical financial statements. The Debtor represents that the information contained in this Disclosure Statement is true and correct to the Debtor's best knowledge.  The Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## G.   IMPORTANT NOTICES AND CAUTIONARY STATEMENTS

The liquidation analysis, estimates and other financial information referenced herein, or attached as exhibits hereto, have been developed by the Debtor with the assistance of its professional advisors.  Although these professional advisors assisted in the preparation of this Disclosure Statement, in doing so such professionals relied upon factual information and assumptions regarding financial, business, and accounting data provided by the Debtor and third parties, all of which information has not been audited.  *The Debtor's professional advisors have not independently verified such information and, accordingly, make no representations as to its accuracy.*  Moreover, although reasonable efforts have been made to provide accurate information, the Debtor cannot warrant or represent that the information in this Disclosure Statement, including any and all financial information, is without inaccuracy or omission.

***No entity may rely upon the Plan or this Disclosure Statement, or any of the accompanying exhibits, for any purpose other than to determine whether to vote in favor of or against the Plan.***  Nothing contained in such documents constitutes an admission of any fact or liability by any party, and no such information may be deemed evidence of the tax or other legal effects of the Plan on holders of claims or interests in these cases.

///

///

# II.

# BACKGROUND

## A.  DESCRIPTION AND HISTORY OF THE DEBTORS' BUSINESS

The Debtor is a California Limited Liability Company (hereinafter the "Debtor") formed in 1996 which owns and manages real property.  The Debtor owns and manages the following industrial properties:

| | |
|---|---|
| **3001 Navone Road** <br> **Stockton, CA (2 tenant building)** <br> -Debtor owns 72%, Breakfront owns 28% <br><br> -Tenant income (1 tenant) $36,560.88 (GAF Real Properties, Inc.) <br> - Debtor signed a new lease for 75,000 sq ft with ECS Refining LLC on or about Nov 14, 2012. <br> -Listed for sale, James Griffin of CB Ellis | **FMV $6,500,000 (100% of value)** <br> **1st:** Investors Warranty of America $3,029,142 (Per Investors Proof of Claim without prepayment penalty of $851,626) <br> **2nd:** Citizens Business Bank $1,699,211 (Per Citizens Proof of Claim without prepayment penalty of $309,382) <br> **Property Taxes:** San Joaquin Tax Collector <br> $75,949 (one year's worth) |
| **2945 S. Angus Road** <br> **Fresno, CA (warehouse, 2 spaces)** <br><br> -Tenant income $12,600 [includes CAM charges] (Fruit Fillings, Inc.) <br> -Listed for sale, Blake Rasmussen | **FMV $4,000,000 (100% of value)** <br> 1st: Investors Warranty of America $2,945,394 (Per Investors Proof of Claim without prepayment penalty of $788,054) <br> Property Taxes: Fresno County Tax Collector <br> $57,650 (one year's worth) |

On the Petition date, both properties were in the possession of a receiver, Donald G. Howell.  Mr. Howell has since returned possession of the properties to the Debtor as well as the funds that were in his possession at the time of turnover.

## B.  PRINCIPALS/AFFILIATES OF DEBTOR'S BUSINESS

The Debtor's managing member is Mark Slotkin, as Trustee for the Slotkin Family Children's Trust. The two members of the Debtor are the Slotkin Family Children's Trust (99%) and Antiquarian Traders, Inc. (1%).  Mr. Slotkin is the Trustee of the Slotkin Family Children's Trust which was formed in or about 1997.

DISCLOSURE STATEMENT

LAW OFFICES
M. Jonathan Hayes

1    Mr. Slotkin is the managing member of the following related entities, who have also

2  recently filed Chapter 11:

3    Olympic Group, LLC., Case No. 2:12-bk-32707-TD, filed June 29, 2012.

4    Golden Oak Partners, LLC., Case No. 2:12-bk-33650-TD, filed July 9, 2012.

5

6    In addition, Mr. Slotkin is the managing Member of Breakfront, LLC and

7  Antiquarian Traders, Inc.

8

9    **C.   MANAGEMENT OF THE DEBTOR BEFORE AND AFTER THE**

10  **BANKRUPTCY**

11    The management of the Debtor, before and after the bankruptcy filing, is Mark

12  Slotkin.

13

14    **D.   EVENTS LEADING TO CHAPTER 11 FILING**

15    The bankruptcy petition was filed to stop the Investor's Warranty foreclosure sale.

16

17    **E.  SIGNIFICANT EVENTS DURING THE BANKRUPTCY**

18    *1.  Bankruptcy Proceedings*

19    The Debtor filed this case as a Chapter 11 case on June 19, 2012 and filed the

20  remaining schedules on July 3, 2012.

21    On July 25, 2012, the Debtor filed its Motion to Use Cash Collateral and set the

22  hearing for August 22, 2012.  The Court granted permission to use cash collateral by Order

23  entered on September 19, 2012.  Since the August 8, 2012 hearing, the Debtor has made

24  the following adequate protection payments:

25    1. Investors Warranty of America $12,525.35 each month as adequate

26    protection for the Angus Property and $13,443.05 each month as adequate

27    protection for the Navone Property.

28

2.  Citizens Business Bank $10,541.55 each month as adequate protection
for the Navone Property.

On September 12, 2012, Investors Warranty filed its Motion for Relief from the
Automatic Stay.  A hearing on that motion is presently set for December 12, 2012.

The Debtor attended the First Meeting of Creditors with the U.S. Trustee's Office
on July 31, 2012.  The Debtor believes that it is substantially in compliance with its duties
under the code and the office of the United States trustee.

The Debtor has retained M. Jonathan Hayes as its General Counsel.  The Order
Granting Debtor's Application to Employ M. Jonathan Hayes as General Bankruptcy
Counsel was entered on August 24, 2012.

The Court conducted a Status Conference on August 8, 2012.  The Debtor filed its
initial Status Conference Report on July 27, 2012 and attended the Status Conference.

On September 20, 2012, the Court entered its Order Setting Bar Date for November
7, 2012.  The Debtor gave notice to all creditors and parties in interest of that bar date by
notice mailed on August 29, 2012.

**SALES EFFORTS:  NAVONE**

In or about September, 2012, the Debtor received an offer to buy the Navone
Property for $6 million.  The Debtor made a counter-offer and continued to negotiate with
the proposed buyer.  The Debtor also sent the offer to both Investors Warranty and
Citizens Bank.  The buyer is unwilling to assume the Investors Warranty loan.  At the
time, the Debtor requested that Investors Warranty waive its purported prepayment penalty
of approximately $851,000.  Investors Warranty refused.

Subsequently the buyer increased its offer to $6.2 million and the Debtor advised
Investors Warranty that it would accept the offer, sell the property and use the proceeds to
cure the arrearages on the Angus Property if Investors Warranty would waive the

prepayment penalty and the default interest demand. Investors Warranty informally agreed to waive the prepayment penalty but not waive the default interest of some $225,000.[1] The Debtor offered to put before the Court the issue of whether or not the default interest is enforceable against the Debtor and accept the determination of the Court however Investors has made it clear that it will not waive the prepayment penalty unless the default interest is paid in full. Because of the impasse between the Debtor and Investors Warranty, the buyer is unwilling to proceed until he can be assured that the Debtor can deliver title.

The Debtor recently found a new tenant for the second space in the building and entered into a sixteen month lease at $18,832 per month. It is anticipated that the tenant will stay longer as the company is in expansion mode. The tenant is ECS Refining, LLC and is unrelated to the Debtor and any of its affiliates or insiders. The new lease obviously increases the value of the Navone Property. A copy of the lease has been provided to Investors Warranty.

Inasmuch as Citizens Bank has recently filed its Proof of Claim and it is seeking a prepayment penalty of an additional $309,382, it is unlikely that the Debtor will be able to sell this property in any event.

The Debtor has filed or will file concurrent with this Status Report a Disclosure Statement indicating that it intends to retain this property unless this issue can be resolved with Investors Warranty.

**SALES EFFORTS:  ANGUS**

In or about October, 2012, the Debtor received an offer to buy the Angus Property for $3,775,000. The buyer agreed to assume the Investors Warranty loan as part of the sale. The Debtor sent the offer to Investors Warranty and requested its approval. Investors

---

[1] The regular interest is 5.64% which increases to 18% if any payment is late by more than ten days.

12
DISCLOSURE STATEMENT

Warranty approved the sale subject to certain conditions.  Shortly thereafter the buyer suddenly withdrew the offer without comment.  The Debtor has received no new offers for the property.

### 2.   Other Legal Proceedings

None.

### 3.   Claims Objections

The Debtor intends to file objections to the claims of Investors Warranty and Citizens Bank relating to the demands for prepayment penalties and default interest.  The Debtor will also file an objection to the claim of its former counsel, Michael J. Berger.  As to other claims, the Debtor has not yet filed objections to any claims and is still investigating the need to do so.

### 4.   Adversary Proceedings

None.

### 5.   Actual and Projected Recovery of Preferential or Fraudulent Transfers

The Debtor has investigated potential claims under Bankruptcy Code sections 547 and 548.  Upon completion of such investigation, the Debtor has determined that there are no viable actions for avoidance and recovery of preferential and fraudulent transfers.

### 6.   Procedures Implemented to Resolve Financial Problems

The rent from the Navone Property which includes a new tenant is sufficient to pay the secured debt on that Property and generate additional funds which the Debtor will use to pay the secured debt on the Angus Property.

**LAW OFFICES**
M. Jonathan Hayes

DISCLOSURE STATEMENT

*7.  Current and Historical Financial Conditions*

The identity and fair market value of the estate's assets are listed in **Exhibit "A."**

The Debtor's financial statements and projections are attached hereto as **Exhibit "B."**

## III.   SUMMARY OF THE PLAN OF REORGANIZATION

### A.   GENERAL OVERVIEW

As required by the Bankruptcy Code, the Plan separates claims and interests into various categories and classes according to the nature and legal rights associated with such claims and interests.  The Plan designates which classes are impaired and which classes are unimpaired.  The Plan also describes the treatment each class will receive under the Plan. The Proponent will ask the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. § 1129(b) on any impaired classes if any of these classes do not vote to accept the Plan and if the Plan can otherwise be confirmed.

### B.   UNCLASSIFIED CLAIMS

Certain types of claims are not placed into voting classes; instead, they are unclassified.  Holders of unclassified claims not considered impaired and not entitled to vote on the Plan; rather the holders of unclassified, unimpaired claims and interests are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

The following categories of claims are neither classified nor impaired under the Plan and are not entitled to vote on the Plan.  None.

### C.   ADMINISTRATIVE EXPENSES

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Bankruptcy Code Section 507(a)(1).  The Bankruptcy Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.  The following is an estimate of the Section 507(a)(1) administrative claims that will be incurred and unpaid

1    (net of any retainers received) through the Effective Date of the Plan and their treatment

2    under this Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| M. Jonathan Hayes (Attorney for the Debtor) | $45,000 (estimated). This balance is net of the pre-petition retainer received of $10,000. | Paid in full on the later of (a) Effective Date of Plan or (b) Court approval of requested fees unless the parties agree to other treatment. |
| Clerk's Office Fees | $0  (estimated | Paid when due |
| Office of the U.S. Trustee Fees | $325 - $650 per quarter (estimated) | Quarterly fees, as required by 28 U.S.C. § 1930(a)(6), shall be paid until a final decree is entered or the case is dismissed or converted. |
| TOTAL | $45,000 | |

## Court Approval of Fees Required

Requests by professionals for payment of fees and costs are generally subject to review and approval by the Court.  Fees of the Court Clerk and the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

## D.  PRIORITY TAX CLAIMS

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the petition date.

The Debtor owes the following taxes:  Franchise Tax Board    $857.50.

## E.  CLASSIFIED CLAIMS AND INTERESTS

***Class 1 -*** *Secured Claim of Investors Warranty on Angus Property*

**LAW OFFICES**
M. Jonathan Hayes

15
DISCLOSURE STATEMENT

<u>Claim/Collateral:</u> Investors Warranty of America (hereinafter "Investors Warranty") has an estimated Class 1 claim of $2,641,550 plus postpetition interest, fees and other charges allowed under Section 506(b) less adequate protection payments made. The claim is secured by a first priority deed of trust on the Debtor's real property located at 2945 S. Angus Road Fresno, CA (hereinafter the "Angus Property"). The Angus Property is valued by the Debtor at $4,000,000.

<u>Impaired/Not Impaired:</u> The Class 1 Claim is impaired under the Plan.

<u>Treatment:</u> The Debtor will pay Investors Warranty its Class 1 obligation in full. Until paid in full, the secured claim shall bear interest at 4%. The claim shall be amortized over a period of 30 years from the Effective Date, with a balloon payment of all unpaid principal and all accrued but unpaid interest on December 31, 2018. The monthly payments will be $12,890 per month, starting on the first day of the first month following the Effective Date, estimated to be March 1, 2013. The Debtor will continue paying the monthly adequate protection payment to Investors until the Effective Date of the Plan.

<u>Comments:</u> On the Effective Date of the Plan, this debt will no longer be in default. Except as otherwise modified herein, the terms of the obligation of the Debtor to Investors Warranty and its lien with respect to its Class 1 claim are not modified. The Navone Property is owned 28% by Breakfront Partners, LLC. To the extent necessary, Breakfront will agree to the terms of this Plan.

### *Class 2 - Secured Claim of Investors Warranty on Navone Property*

<u>Claim/Collateral:</u> Investors Warranty of America (hereinafter "Investors Warranty") has an estimated Class 2 claim of $2,860,224 plus postpetition interest, fees and other charges allowed under Section 506(b) less adequate protection payments made. The claim is secured by a first priority deed of trust on the Debtor's real property located at 3001 Navone Road, Stockton, CA (hereinafter the "Navone Property"). The Navone Property is valued by the Debtor at $6,500,000.

DISCLOSURE STATEMENT

LAW OFFICES
M. Jonathan Hayes

Impaired/Not Impaired: The Class 2 Claim is impaired under the Plan.

Treatment: The Debtor will pay Investors Warranty its Class 2 obligation in full. The Debtor will cure the arrearage, estimated to be $75,000, on the Effective Date. The Debtor will otherwise pay Investors according to the contract or interest at 5.64% with a balloon payable on November 1, 2025. The monthly payments will be $24,757 per month. The Debtor will continue paying the monthly adequate protection payment to Investors until the Effective Date of the Plan.

Comments: On the Effective Date of the Plan, this debt will no longer be in default. The terms of the obligation of the Debtor to Investors Warranty and its lien with respect to its Class 2 claim are not modified. The Debtor will not pay the prepayment penalty demanded in the Proof of Claim or the default interest. The Navone Property is owned 28% by Breakfront Partners, LLC. To the extent necessary, Breakfront will agree to the terms of this Plan.

*Class 3 -* Secured Claim of Citizens Bank  on Navone Property

Claim/Collateral: Citizens Bank (hereinafter "Citizens") has an estimated Class 3 claim of $1,554,514 plus postpetition interest, fees and other charges allowed under Section 506(b) less adequate protection payments made. The claim is secured by a second priority deed of trust on the Debtor's real property located at 3001 Navone Road, Stockton, CA (hereinafter the "Navone Property").

Impaired/Not Impaired: The Class 3 Claim is impaired under the Plan.

Treatment: The Debtor will pay Citizens Bank its Class 3 obligation in full. Until paid in full, the secured claim shall bear interest at 6%. The claim shall be amortized over a period of 30 years from the Effective Date, with a balloon payment of all unpaid principal and all accrued but unpaid interest on December 31, 2018. The monthly payments will be $9,593 per month, starting on the first day of the first month following the Effective Date, estimated to be March 1, 2013. The Debtor will continue paying the

monthly adequate protection payment to Citizens until the Effective Date of the Plan.

      <u>Comments</u>:  On the Effective Date of the Plan, this debt will no longer be in default. Except as otherwise modified herein, the terms of the obligation of the Debtor to Citizens Bank and its lien with respect to its Class 3 claim are not modified.  The Navone Property is owned 28% by Breakfront Partners, LLC.  To the extent necessary, Breakfront will agree to the terms of this Plan.

### *Class 4A - Secured Claim of the San Joaquin County Treasurer and Tax Collector*

      <u>Claim/Collateral:</u> The San Joaquin County Treasurer and Tax Collector has an estimated claim of $75,945 which is secured by the Navone Property.

      <u>Impaired/Not Impaired:</u> The Class 4A Claim is impaired under the Plan.

      <u>Treatment:</u> The obligation of the Debtor to the San Joaquin County Treasurer and Tax Collector will be paid in full in monthly installments of approximately $1,930 beginning on the Effective Date.  Until paid in full, the claim shall accrue interest at the governmental interest rate, estimated to be 18%.

### *Class 4B - Secured Claim of the Fresno County  Treasurer and Tax Collector*

      <u>Claim/Collateral:</u> The Fresno County Treasurer and Tax Collector has an estimated claim of $57,650 which is secured by the Angus Property.

      <u>Impaired/Not Impaired:</u> The Class 4B Claim is impaired under the Plan.

      <u>Treatment:</u> The obligation of the Debtor to the Fresno County Treasurer and Tax Collector will be paid in full in monthly installments of approximately $1,447 beginning on the Effective Date.  Until paid in full, the claim shall accrue interest at the governmental interest rate, estimated to be 18%.

### *Class 5 - Priority Unsecured Claims*

      <u>Claims:</u> Certain priority claims specified in Sections 507(a)(3), (4), (5), (6), and (7)

LAW OFFICES
M. Jonathan Hayes

1   of the Bankruptcy Code are required to be classified in the Plan.  Each class of priority

2   claims must be paid in cash in full on the Effective Date of the Plan unless the holders of

3   such claims vote, as a class, to accept deferred payments

4       Impaired/Not Impaired:  Class 5 Allowed Priority Claims are not impaired under

5   the Plan.

6       Treatment:    On the Effective Date, the holders of Class 5 Priority Claims will be

7   paid in cash in full the allowed amount of each Class 5 Priority Claim.

8       Comments:  The Debtor estimates that there are no Class 5 Priority Claims.

9

10               **Class 6** *– Unsecured Claims*

11       Claims: Class 6 general unsecured claims are unsecured claims not entitled to

12   priority under Code Section 507(a).  In the present case, the Debtor estimates that there are

13   approximately $8,000 of general unsecured debts other than tenant deposits.

14       Impaired/Not Impaired: Class 6 Allowed General Unsecured Claims are unimpaired

15   under the Plan.

16       Treatment: Holders of Class 6 Claims will be paid in full 30 days after the Effective

17   Date.

18       Comments:

19

20               **Class 7**  *– Unsecured Claims – tenant deposits*

21       Claims: Class 7 general unsecured claims are tenant deposits estimated to total

22   $28,000.

23       Impaired/Not Impaired: Class 7 Allowed General Unsecured Claims are unimpaired

24   under the Plan.

25       Treatment: Holders of Class 7 Claims will be paid in full according to the terms of

26   the deposit agreement reached with each tenant.

27       *Comments:*

28

19
DISCLOSURE STATEMENT

**Class of Interest Holders**

*Class 8* – *Debtor*

The Members of the Debtor will retain their interests in the Debtor.

## F.  MEANS OF PERFORMING THE PLAN

### 1.  Funding for the Plan

The Debtor will fund the plan from the tenant income it receives from the lease of its real property.  See Exhibit B.

### 2.  Management of the Reorganized Debtor

The management of the Debtor will remain the same.

### 3.  Disbursing Agent

The Debtor will act as the disbursing agent for the purpose of making the distributions to the creditors under the Plan.  The Disbursing Agent will receive no compensation for its efforts.

### 4.  Distributions

Cash payments made pursuant to the Plan shall be in U.S. dollars by checks drawn on domestic bank selected by the Disbursing Agent.

Any distributions under the Plan that are unclaimed or undeliverable for a period of six (6) months after distribution thereof shall be revested in the Reorganized Debtor, free of any restrictions thereon, and any entitlement of any holder of any claim to such distribution shall be extinguished and forever barred.

## G.  RISK FACTORS

Since the Plan contemplates payments to certain classes of creditors over time following the Effective Date, it is possible that the Debtor will not have sufficient cash flow to pay all of the obligations created under the Plan.  The Debtor believes that it will

1  be able to meet all of its financial obligations under the Plan but the projections cannot be

2  guaranteed to be completely accurate.

3

4  ## H.  OTHER PROVISIONS OF THE PLAN

5  *1.  Executory Contracts and Unexpired Leases*

6  a.  Assumptions

7  The Debtor will assume all executory contracts or unexpired leases.  The Debtor

8  reserves the right to modify the Plan to designate additional contracts or leases to be

9  assumed at any time prior to the hearing on Confirmation of the Plan.

10  On the Effective Date, each of the unexpired leases and executory contracts so

11  designated shall be assumed as obligations of the Debtor.  The Confirmation Order shall

12  constitute an Order approving the assumption of each lease and contract.  If you are a party

13  to a lease or contract to be assumed and you object to the assumption of your lease or

14  contract, you must file and serve your objection to the Plan within the deadline for

15  objecting to the confirmation of the Plan.

16  b.  Rejections

17  The Debtor does not have any executory contracts or unexpired leases that the

18  Debtor intends to reject pursuant to this Plan.  Any unexpired lease or executory contract

19  not expressly rejected shall be deemed assumed as of the Effective Date.  The Debtor

20  reserves the right to modify the Plan to designate certain contracts or leases for rejection at

21  any time prior to the hearing on confirmation of the Plan.

22  The order confirming the Plan shall constitute an order approving the rejection of

23  such leases and contracts.  If you are a party to a contract or lease to be rejected and you

24  object to the rejection of your contract or lease, you must file and serve your objection to

25  the Plan within the deadline for objecting to the confirmation of the Plan. See Disclosure

26  Statement for the specific date.

27  THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM

28

**LAW OFFICES**
M. Jonathan Hayes

21
DISCLOSURE STATEMENT

ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS THIRTY DAYS AFTER THE EFFECTIVE DATE.  Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

## 2.   CHANGES IN RATES SUBJECT TO REGULATORY COMMISSION APPROVAL

The Debtor is not subject to governmental regulatory commission approval of their rates.

## 3.   RETENTION OF JURISDICTION.

The Court will retain jurisdiction over this bankruptcy case until a Final Decree is entered by the Court.  It is estimated that the Final Decree will be entered approximately six months after the Plan is confirmed by the Court.  At that time the bankruptcy case will be closed.

## I.   TAX CONSEQUENCES OF THE PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules that make it difficult to state completely and accurately all the tax implications of any action.

The Debtor does not anticipate that confirmation of the Plan will have a significant or material effect on their tax liability.  The Debtor makes no representations regarding the potential tax consequences to creditors.

## IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

### A.  WHO MAY VOTE OR OBJECT

#### 1.   Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

#### 2.   Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

##### a.   What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a

claim or interest is filed, the creditor or interest holder holding the claim or interest cannot

vote unless the Court, after notice and hearing, either overrules the objection or allows the

claim or interest for voting purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE IS**

**November 7, 2012.**  A creditor or interest holder may have an allowed claim or interest

even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1)

it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed,

contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An

interest is deemed allowed if it is scheduled and no party in interest has objected to the

interest.  Consult **Exhibit "C"** to see how the Debtor has characterized your claim or

interest.

b.  *What Is an Impaired Claim/Interest*

As noted above, an allowed claim or interest only has the right to vote if it is in a

class that is <u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal,

equitable, or contractual rights of the members of that class.  For example, a class

comprised of general unsecured claims is impaired if the Plan fails to pay the members of

that class 100% of what they are owed.

In this case, the Proponent believes that Classes 1, 2, 3, and 5 are impaired and that

holders of claims in each of these classes are therefore entitled to vote to accept or reject

the Plan.  The Proponent believes that Classes 4 and 6 are unimpaired and that holders of

claims of those classes therefore do not have the right to vote to accept or reject the Plan.

Parties who dispute the Proponents' characterization of their claim or interest as being

impaired or unimpaired may file an objection to the Plan contending that the Proponents

have incorrectly characterized the class.

3.  *Who is <u>Not</u> Entitled to Vote*

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been

DISCLOSURE STATEMENT

disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.   Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.   Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as is discussed later.

### 6.   Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the shareholders of such class that actually voted, voted to accept the Plan.

### 7.   Treatment of Non-accepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the

Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

        *8.  Request for Confirmation Despite Non-acceptance by Impaired Classes*

        The Proponent will ask the Court to confirm this Plan by cramdown on any impaired classes if any of these classes do not vote to accept the Plan.

## B.  LIQUIDATION ANALYSIS

        Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

        In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

        In a Chapter 7 case, a trustee is appointed and entitled to compensation from the

bankruptcy estate in an amount not to exceed 25% on the first $5,000 of all moneys disbursed, 10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on all amounts over $1 million.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here since all creditors are paid in full under the Plan.

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION:     = 100%**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:          = 100%**

## FEASIBILITY

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  In this case, Debtor's counsel will be paid $45,000 on the Effective Date or, if later, when the Court approves the fees.

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments. The Debtor believes that it will have sufficient cash on hand in order to meet its obligations under the Plan.  The Debtor has provided a budget of its Projected Disposable Income on **Exhibit "B."**   As to the balloon payment which must be paid, the Debtor will refinance the property if possible and if not

possible, will sell it to make the payment.  There will be no other debts at that time so the

Debtor expects to be able to refinance or sell the Alameda Property to pay the secured

claims.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR

FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE

FINANCIAL STATEMENTS.

## V.  EFFECT OF CONFIRMATION OF PLAN

## 1.  DISCHARGE

This Plan provides that the Debtor shall be discharged of liability for payment of

debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141.

However, the discharge will not discharge any liability imposed by the Plan.   The

discharge will be entered on the Effective Date if the Court permits that or otherwise on

the date the Final Decree is entered.

## 2.   REVESTING OF PROPERTY IN THE DEBTOR

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of

the property of the estate in the Debtor.

From and after the Effective Date, the Debtor may operate and may use, acquire,

and dispose of property, and compromise and settle any claims or causes of actions

without supervision or consent of the Bankruptcy Court and are free of any restrictions of

the Bankruptcy Code or Bankruptcy Rules.

The Debtor shall have, retain, reserve and be entitled to assert all claims, causes of

action, rights of setoff and other legal or equitable defenses that the Debtor had

immediately prior to the Petition Date as fully as if the Debtor's bankruptcy case had not

been commenced; and all of the Debtor's legal and equitable rights respecting any such

claim which is not specifically waived, extinguished, relinquished or transferred by the

Plan may be asserted after the Effective Date.

### 3.  MODIFICATION OF PLAN

The Proponent may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

### 4.  POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF REORGANIZED DEBTOR'S PROFESSIONALS

After the Confirmation Date, the Reorganized Debtor may employ, without notice, hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals (the "Post-confirmation Professionals") as it may desire to render services on such terms as it deems reasonable.  With respect to services rendered by the Post-confirmation Professionals, the Reorganized Debtor shall be authorized to pay for such services, related costs, and expenses without notice, hearing, or order of the Bankruptcy Court.

### 5.  POST-CONFIRMATION STATUS REPORT

Within 120 days of the entry of the order confirming the Plan, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.  Further status reports shall be filed every 120 days and served on the same entities.

### 6.  POST-CONFIRMATION CONVERSION/DISMISSAL

1  A creditor or party in interest may bring a motion to convert or dismiss the case

2  under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If

3  the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all

4  property that had been property of the Chapter 11 estate, and that has not been disbursed

5  pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be

6  reimposed upon the revested property, but only to the extent that relief from stay was not

7  previously authorized by the Court during this case.

8  The order confirming the Plan may also be revoked under very limited

9  circumstances.  The Court may revoke the order if the order of confirmation was procured

10 by fraud and if the party in interest brings an adversary proceeding to revoke confirmation

11 within 180 days after the entry of the order of confirmation.

12

13 **7.   FINAL DECREE**

14 Once the estate has been fully administered as referred to in Bankruptcy Rule 3022,

15 the Reorganized Debtor, or other party as the Court shall designate in the Plan

16 Confirmation Order, shall file a motion with the Court to obtain a final decree to close the

17 case.

18

19 Dated:  November 21, 2012          By:     /s/  Mark Slotkin

20                                        **Mark Slotkin, Debtor's**
                                         **Managing Member and Plan**
21                                              **Proponent**

22                                    By:       **/s/ M. Jonathan Hayes**

23                                           M. Jonathan Hayes
                                           Roksana D. Moradi
24                                      *Attorneys for Plan Proponent*

25

26

27

28

**LAW OFFICES**
M. Jonathan Hayes

1
2

## **SUPPORTING DECLARATION**

3      I, Mark Slotkin, declare as follows:

4

5      1.      I have personal knowledge of the facts set forth below and, if called to

6   testify, would and could competently testify thereto.

7      2.      I am the Managing Member of the Debtor herein.

8      3.      I have reviewed the information within the Disclosure Statement, including

9   all financial information.

10      4.      I believe that all information contained in the Disclosure Statement is true

11   and correct and fairly presented, to the best of my knowledge.

12

13      I declare under penalty of perjury under the laws of the United States of America

14   that the foregoing is true and correct.

15

16

17      Executed this 21st day of November, 2012, at Beverly Hills, California.

18

19

20                                             **/s/  Mark Slotkin**

21                                                    Mark Slotkin

22

23

24

25

26

27

28

# EXHIBIT A - LIST OF ALL ASSETS

| | | |
|---|---|---|
| **3001 Navone Road**<br>**Stockton, CA (2 tenant building)**<br>-Debtor owns 72%, Breakfront owns 28%<br><br>-Tenant income (1 tenant) $36,560.88<br>(GAF Real Properties, Inc.)<br>- Debtor signed a new lease for 75,000 sq ft<br>with ECS Refining LLC on or about Nov<br>14, 2012.<br>-Listed for sale, James Griffin of CB Ellis | **FMV $6,500,000 (100% of value)**<br>**1st:** Investors Warranty of America<br>$3,029,142 (Per Investors Proof of Claim<br>without prepayment penalty of $851,626)<br>**2nd:** Citizens Business Bank<br>$1,699,211 (Per Citizens Proof of Claim<br>without prepayment penalty of $309,382)<br>**Property Taxes:** San Joaquin Tax<br>Collector<br>$75,949 (one year's worth) | |
| **2945 S. Angus Road**<br>**Fresno, CA (warehouse, 2 spaces)**<br><br>-Tenant income $12,600 [includes CAM<br>charges] (Fruit Fillings, Inc.)<br>-Listed for sale, Blake Rasmussen | **FMV $4,000,000 (100% of value)**<br>1st: Investors Warranty of America<br>$2,945,394 (Per Investors Proof of Claim<br>without prepayment penalty of $788,054)<br>Property Taxes: Fresno County Tax<br>Collector<br>$57,650 (one year's worth) | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISCLOSURE STATEMENT

**LAW OFFICES**
M. Jonathan Hayes

1

## EXHIBIT B – DEBTOR'S FINANCIAL STATEMENTS AND PROJECTIONS

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **EXHIBIT C - LIST OF CREDITORS/CLAIMS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.  Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:  9700 Reseda Blvd., Suite 201, Northridge, CA 91324.

A true and correct copy of the foregoing document described as **DEBTOR'S DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

## I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING

**("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **11/23/2012** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐   Service information continued on attached page

- Michael B Brown mbbrown@stoel.com, cslyle@stoel.com;amcunha@stoel.com;cmwallentine@stoel.com
- Louis J Cisz lcisz@nixonpeabody.com
- Christopher D Crowell ccrowell@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Erin L Eliasen eleliasen@stoel.com, nmevans@stoel.com
- Michael G Fletcher mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- M Jonathan Hayes jhayes@hayesbklaw.com, roksana@hayesbklaw.com;carolyn@hayesbklaw.com;elizabeth@hayesbklaw.com
- Lewis R Landau LLandau@HorganRosen.com
- David B Levant dblevant@stoel.com, lcmccloy@stoel.com
- Queenie K Ng queenie.k.ng@usdoj.gov
- Abel Ortiz Abel.ortiz@kts-law.com, Kristyann.brodecki@kts-law.com;holly.stewart@kts-law.com;david.doorbar@kts-law.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Edward T Weber bknotice@rcolegal.com

## II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served): On **11/23/2012** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class,

1  postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration

2  that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

3  ☐  Service information continued on attached page

4

5  **Hon. Thomas B. Donovan**
US Bankruptcy Court
Central District – LA Branch

6  255 E. Temple Street, Suite 1352
Los Angeles, CA 90012

7

8  **III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR**

9  **EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **11/23/2012** I served the following person(s) and/or entity(ies)

10 by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a

11 declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

12 Levant, David B. [DBLEVANT@stoel.com]

13 Christopher D. Crowell [ccrowell@frandzel.com]

14

15 ☐  Service information continued on attached page

16 I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

17 <u>  11/23/2012              MJ Hayes                         /s/ MJ Hayes                 </u>
   Date          Type Name                      Signature

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES**
M. Jonathan Hayes

DEBTORS' DISCLOSURE STATEMENT